# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHNNY ORTIZ,

      Petitioner,

vs.                                                     No. CIV. 99-1326 MV/LFG

TIM LeMASTER, Warden, and
PATRICIA A. MADRID, Attorney General,

      Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

    1.  This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed November 16, 1999.  Respondent filed his Answer [Doc. 9] and a Motion to Dismiss Petition with Prejudice [Doc. 10] on January 3, 2000.  Petitioner Johnny Ortiz ("Ortiz") challenges the sentence entered upon revocation of his probation by the Second Judicial District Court in State v. Ortiz, No. CR-94-719 (County of Bernalillo, New Mexico).

    2.  As grounds for federal habeas review, Ortiz asserts that he was sentenced to a longer term than allowed under state law for his probation violation and that the sentencing violates double jeopardy principles.  He also raises issues of ineffective assistance of counsel at the original sentencing hearing and at the probation violation hearing.  Ortiz does not attack his conviction, only the sentence

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

imposed upon probation revocation.

3.  Respondent concedes, and this Court finds, that Ortiz has exhausted his available state remedies and the petition is properly before the Court.

## **Background**

4.  Ortiz was indicted on April 5, 1994 of trafficking in cocaine and other offenses. (Ex. B to Answer). He was arraigned on May 9, 1994 and initially entered a plea of not guilty. Following his release on bond, Ortiz failed to appear for trial, and a warrant for his arrest was issued. He was arrested on September 19, 1994. (Record Proper, at 9, 19, 20; hereafter, "RP").[2]

5.  On December 27, 1994, Ortiz entered into a Plea and Disposition Agreement (Ex. C. to Answer), in which he agreed to plead guilty to trafficking in cocaine in cause CR 94-719, as well as to other offenses under separate cause numbers. Under the terms of this plea agreement, the State agreed to a seven-year cap on incarceration "at initial sentencing," and agreed to dismiss other charges against Ortiz. The cocaine trafficking conviction carried a maximum sentence of nine years incarceration.

6.  Under the heading "Potential Incarceration," the plea agreement reads as follows:

> If the court accepts this agreement, the defendant will be ordered to serve a period of incarceration up to seven (7) years at initial sentencing. Should Defendant fail to comply with any sentence or condition of probation imposed Defendant could be sentenced to the remainder of the sentences. He may also be ordered to serve a period of probation. If the defendant later violates that probation, he may be incarcerated for the balance of the sentence.

(Ex. C to Answer, at 2). With regard to the seven-year cap, the plea agreement provided as follows:

---

[2]The pages of the Record Proper were not numbered. The Court has assigned page numbers by counting forward from the first page as page 1.

>Any "cap" or other limitation on incarceration shall be a limitation on imprisonment only at initial sentencing.  If the defendant violates any condition of parole or probation, the court may sentence him to imprisonment without considering the limitation.

(Ex. C to Answer, at 3).  Ortiz signed this plea agreement, stipulating that he had read and understood it, and that he had discussed it with his attorney.  He further stipulated that:

>I understand that if the court grants me probation, a suspended sentence, a deferred sentence or a conditional discharge, the terms and conditions of the sentence are subject to modification if I violate any of the terms or conditions imposed.

(Ex. C to Answer, at 4).

7. Ortiz appeared for a plea hearing on December 27, 1994 and was sentenced on February 6, 1995.  The Amended Judgment and Sentence, filed March 7, 1995, recited that the court accepted Ortiz's guilty plea and that he was sentenced to a term of incarceration of nine years for the cocaine conviction, with concurrent sentences for other offenses.  The total sentence rendered was for nine years' incarceration, of which seven years was suspended, for an actual sentence of imprisonment of two years.  Ortiz was ordered to be placed on supervised probation for three years following release from custody, "on condition that Defendant obey all rules, regulations and orders of the Probation Authorities."  (Exhibit F to Answer, at 2).  Ortiz was released from prison on January 27, 1996.  (Transcript of Probation Violation Plea/Sentencing Hearing, March 25, 1998, at 5; hereafter referred to as "3/15/98 Hearing").

8. On October 21, 1996, the District Attorney filed a motion to revoke Ortiz's probation, based on his failure to comply with conditions of probation.  (Ex. I to Answer).  Although the record is not entirely clear, it appears that Ortiz was re-incarcerated following the probation violation, from October 1996 until June 17, 1997 (3/25/98 Hearing, at 5), and that he was released, again violated

3

probation, and was arrested on October 18, 1997. (RP, at 47). He was scheduled to appear for sentencing on the probation violation on November 5, 1997 (RP, at 52); however, he failed to appear for the November 5 hearing and another warrant was issued for his arrest. (RP, at 55).

9. Ortiz was apprehended on November 16, 1997 and appeared for a hearing on December 3, 1997. (RP, at 56; Ex. J to Answer). An amended Order of Probation was filed in the district court on December 17, 1997. Ortiz again violated probation. He was arrested on January 12, 1998, and a Second Motion to Revoke Probation was filed on January 14, 1998 (RP, at 67; Ex. N to Answer), alleging that Ortiz violated the conditions of his probation and committed additional offenses by possessing a firearm, receiving stolen property, and using a controlled substance. Ortiz was released under the "Alternatives to Secure Detention Project," but he violated the terms of this release and had to be arrested again on March 22, 1998. (RP, at 77-80).

10. A probation violation hearing was held on March 25, 1998. Ortiz admitted violating his probation, after being advised by the judge that he was facing a period of incarceration amounting to the balance of his suspended sentence. (3/25/98 Hearing, at 2-4; Ex. O to Answer). The judge revoked probation and "impose[d] the balance of the suspended sentence." (3/25/98 Hearing, at 10). An Order and Commitment was filed on May 20, 1998, in which the state district judge ordered that Ortiz be sentenced to a term of incarceration of nine years, with two years credit for time previously served, plus additional credit for time served on probation. (Ex. A-1 to Answer).

11. On June 10, 1998, Ortiz filed a Motion for Reconsideration of Sentence, which was denied on June 15, the district judge noting that "[T]he sentence followed numerous probation violations and failures to comply with conditions of release as well as new felony charges, and is within the terms of the plea." (Ex. R to Answer, at 2). Ortiz's second motion to amend the sentence,

filed December 22, 1998, was granted in part, with regard to a parole issue; however, the nine-year sentence of incarceration was not altered. (Ex.U to Answer).

12. In April 1999, Ortiz filed a petition for habeas corpus with the state court, alleging that he was re-sentenced in March 1998 for a crime for which he had already been sentenced in February 1995, in violation of his double jeopardy protections. He also alleged ineffective assistance of counsel, in that his attorney did not object at the probation violation hearing "to the sentence that was being reimposed." (Ex. V to Answer). The Petition was denied on May 10, 1999, on grounds that "[t]he petition does not state any legal basis for relief. He was found in violation of his probation and a legal sentence was imposed." (Ex. W to Answer).

13. In his petition for certiorari to the state supreme court, Ortiz again raised the double jeopardy issue. He also asserted that he was told by his attorney at the time of the original sentence in February 1995 that, if he violated probation, he could be incarcerated for the remainder of the probation time only and was never informed that he could be re-sentenced to the full nine-year term. (Ex. X to Answer). The petition for certiorari was denied by the New Mexico Supreme Court on August 23, 1999.

## Discussion

### Constitutionality of the Sentence for Violation of Probation

14. Ortiz claims, among other things, that his sentence violated state statutory law. He cites in particular the section on "Return of Probation Violator," N.M.S.A. (1978) § 31-21-15. Federal habeas relief is generally not available for errors of state law, Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 572 (10th Cir. 2000), including errors of state sentencing law; *see*, Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475 (1991). However, an erroneous interpretation of state

law can violate due process if it is inconsistent with the fundamentals of liberty and justice, Chavez v. Baker, 399 F.2d 943 (10th Cir. 1968); Tapia v. Tansy, 926 F.2d 1554, 1561 n.9 (10th Cir. 1991); and a state court's arbitrary disregard of state sentencing law and imposition of an unauthorized sentence may violate the defendant's due process rights. Pimenta v. Crandell, 201 F.3d 448 (Table, text in Westlaw), No. 99-2055, 1999 WL 1009518, at *4 (10th Cir. Nov. 8, 1999), *citing* Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227 (1980); and Whalen v. United States, 445 U.S. 684, 689-90 n. 4, 100 S. Ct. 1432 (1980).

     15. The state court's interpretation of § 31-21-15 in Ortiz's case was neither erroneous, arbitrary, nor inconsistent with fundamental principles. That section provides:

> B. . . . If the [probation] violation is established, the court may continue the original probation, revoke the probation and either order a new probation . . . or require the probationer to serve the balance of the sentence imposed or any lesser sentence.

It is clear that the state court chose the option of requiring Ortiz "to serve the balance of the sentence imposed." The original "sentence imposed" was nine years' incarceration. At the sentencing hearing on the cocaine trafficking and other charges, the judge clearly stated,

> *the Court is imposing nine years on the trafficking*, 18 months on the possession, 18 months on the shooting from the motor vehicle, one year on the receiving or transferring the stolen vehicle. *All of that will run concurrently for nine years in the state penitentiary.* Seven of those years will be suspended, giving you two years in the state pen. [Emphasis added].

(Transcript of Sentencing Hearing, February 6, 1995, at 3-4 [hereafter, "2/6/95 Hearing"].

The Amended Judgment and Sentence, filed March 7, 1995, reads:

> The Defendant is hereby found and adjudged guilty and convicted of said crimes, *and is sentenced to the custody of the Corrections Department to be imprisoned for the term of nine (9) years* as to

> Count 1 in CR 94-0719 . . . of which seven (7) years is suspended, for an actual sentence of imprisonment of two (2) years. Execution of seven (7) years of the sentence is suspended and Defendant is ordered to be placed on supervised probation for three (3) years following release from custody . . . [Emphasis added].

There is no question that the district judge imposed a nine-year sentence on Ortiz, although a portion of that sentence was suspended. Thus, when the judge "require[d] the probationer to serve the balance of the sentence imposed" following the probation violation, he was acting in accordance with the statute and did not violate fundamental principles of liberty and justice.

16. Ortiz also claims that the sentence imposed upon probation revocation violated double jeopardy principles. Among other things, the guarantee against double jeopardy protects against multiple punishments for the same offense. United States v. DiFrancesco, 449 U.S. 117, 129, 101 S. Ct. 426, 433 (1980). However, there is no double jeopardy protection against revocation of probation and later imposition of any sentence of imprisonment which might originally have been imposed. Gillespie v. Hunter, 159 F.2d 410, 412 (10th Cir. 1947); DiFrancesco, at 133, 137.

> The purpose of probation is to permit the judge to give the convicted person an opportunity to mend his ways and to so have his freedom under conditions, or at least to have such freedom after a short period of imprisonment . . . The pressure upon the individual during the period of probation is of course the possibility of having to serve the sentence imposed, or of having a sentence imposed . . . [S]entencing on revocation of probation does not place the defendant in double jeopardy.

Thomas v. United States, 327 F.2d 795, 797 (10th Cir. 1964).

17. The Court therefore rejects Ortiz's argument that he was subjected to double jeopardy when the judge imposed the original nine-year sentence, with deductions for time already served, upon revocation of Ortiz's probation. Ortiz's argument that he did not understand the import of the

plea agreement is addressed below, in the discussion of voluntariness of the plea.

    18. Ortiz also claims that the revocation sentence violated his constitutional rights to due process and equal protection, and against cruel and unusual punishment. The Court rejects these claims. He has stated no grounds for an equal protection challenge, and the sentence comports with state law and is not otherwise cruel or unusual. Ortiz does not set forth the basis for his due process challenge; however, the Supreme Court has established that procedural due process in probation revocation proceedings requires: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing judge whether violation of a condition warrants revocation of probation. Black v. Romano, 471 U.S. 606, 611, 105 S. Ct. 2254, 2257 (1985). Both of these requirements were met in this case.

    19. A probation revocation hearing is flexible and informal and "does not require the full panoply of procedural safeguards associated with a criminal trial." Black, 471 U.S. at 613. Where the probationer is given an opportunity to show that he did not violate the conditions, or that revocation is not the appropriate disposition, due process is satisfied. Id. As to the first factor, Ortiz admitted that he violated his probation. With regard to the second factor, the judge noted that Ortiz had already had numerous chances to avoid lengthy incarceration, including referral to the "Alternatives to Secure Detention Project" (ASDP), but he consistently violated the terms of his release. The judge stated at the sentencing hearing:

> I'm left with the impression, Mr. Ortiz, that you're a flat threat to society. I don't know that I can do any good for you. I was going to get you into drug court. You were picked up with guns, you were picked up on new charges. You're not reporting. I gave you ASDP, you blew that off . . . I'm not sure how many more ways one can blow probation than the way you've done it . . . If I wrote a script of what it would take to do to prison, you've pretty much followed it

> . . . Frankly, I don't know that prison is going to do you any good. I feel it's going to do society good, for a while, until you get your act together. I'm not looking a rehabilitation or detention, none of that seems to work. I'm just flat taking you out of society for a while. I'm sorry to say it's come down to that with you . . ..

(3/25/98 Hearing, at 10-12). The record does not support Ortiz's allegation that his due process was violated.

### Voluntariness of Plea

20. Ortiz alleges that he was not informed of the consequences of his plea, and the plea was therefore not intelligently made. On habeas review, a federal court may set aside a state court guilty plea only for failure to satisfy due process. Miles v. Dorsey, 61 F.3d 1459, 1465 (10th Cir. 1995). A defendant has not been given due process unless his guilty plea was voluntarily and intelligently made. Id., *citing* Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1711-12 (1969). The Court will uphold the plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir. 1996).

21. Ortiz claims that he was under the impression, at the time he entered into the plea agreement, that his maximum exposure to jail time upon probation violation would be the amount of time remaining on his probationary period. He says he was not aware that he could be sent back to prison to serve his original sentence, and that he would not have entered into the plea agreement if he had known this. This claim is not borne out by the record.

22. The plea agreement in this case was not ambiguous. It recited the maximum term of incarceration to which Ortiz could be sentenced for the four offenses included in the agreement, for a total of 13 years. In exchange for Ortiz's guilty plea, the government agreed to drop other charges

9

and further agreed that an appropriate cap "at initial sentencing" was seven years. The agreement clearly provided that this agreed-upon "cap" on incarceration would be applicable only "at initial sentencing" and that if Ortiz violated his probation, the court could sentence him to imprisonment for the balance of the sentence, without considering the seven-year cap. Ortiz was, thus, notified that the court could go beyond seven years in imposing a term of incarceration if Ortiz violated probation; this does not logically mesh with Ortiz's claim that he understood that the only incarceration to which he would be subject, if he violated probation, would be the amount of time remaining on his three-year probationary period. (Ex. C to Answer, at 2-3).

23. Ortiz signed the plea agreement, asserting that he had read and understood the agreement and that he had discussed the case and his constitutional rights with his lawyer. As noted above, he also confirmed his understanding that the terms and conditions of the sentence would be subject to modification if he were to violate any condition of probation. His attorney also signed the agreement, stating that he had discussed the case with Ortiz and advised Ortiz of his constitutional rights. At the plea hearing on December 27, 1994, the judge questioned Ortiz on his understanding of the terms of the plea agreement; Ortiz responded, "I understand exactly." (Transcript of Plea Hearing, December 27, 1994 [hereafter, "12/27/94 Hearing"], at 4). Solemn declarations in open court carry a strong presumption of verity. Lasiter v.Thomas, 89 F.3d 699, 702 (10th Cir. 1996).

24. As was true in Cunningham v. Diesslin, *supra*, Ortiz's "argument centers on his understanding of the parole [in this case, probation] terms resulting from his plea. He does not contend that his plea resulted from any form of coercion, material misrepresentation by the prosecutor or the trial court, or an unfulfilled promise." Id., at 1060. A defendant's "subjective understanding" regarding his plea, not induced by any promise on the part of the defense attorney, the prosecutor,

10

or the court, does not undermine the constitutionality of the plea or raise a question whether the state breached its end of a plea bargain. Id., *citing* Laycock v. New Mexico, 880 F.2d 1184, 1186 (10th Cir. 1989).

25. The record does not reflect, and Ortiz does not allege, that the prosecutor or the court misrepresented or failed to inform him of the consequences of the plea agreement. He does assert that at the time of the original sentencing, his attorney told him "[if] I violated my probation that I would have to serve the remainder of my probation time incarcerated . . . [and] I was never told that I could be resentenced to nine more years." There is nothing on the record to support Ortiz's contention that his attorney made this statement and, in any case, "[a]n attorney's erroneous sentence estimate or prediction of parole does not render a plea unknowingly made." Cunningham, at 1061. Furthermore, the record does not reflect that this factor – *i.e.*, the amount of prison time Ortiz would have to serve in the event he violated the terms of his probation – affected his decision to plead guilty. *See,* Cunningham, at 1061. Ortiz had other reasons for accepting the plea offer, including a recommended cap of seven years on a possible 13-year sentence of incarceration (in the end, he was sentenced to only two years incarceration, the remainder having been suspended), and the agreement by the prosecutor to drop other charges. The Court cannot say that he obtained no benefit from the plea, and there is nothing to support his claim that it was not voluntarily and intelligently made.

Ineffective Assistance of Counsel.

26. As noted above, Ortiz alleges that his attorney did not inform him, at the time he entered his original plea, of the full consequences he would face if he were to violate conditions of probation. The two-prong test for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), applies to challenges to guilty pleas based upon ineffectiveness of

counsel. Wallace v.Ward, 191 F.3d 1235, 1247 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 2222 (June 5, 2000). To prevail on a claim of ineffective assistance of counsel in the plea process, Ortiz must show that his attorney's performance fell outside "the range of competence demanded of attorneys in criminal cases," Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985), and that he was prejudiced by his attorney's inadequate performance in that there is a reasonable probability that, if he had been properly advised, he would not have pled guilty and instead would have insisted on going to trial. Id., at 58-59.

27. Under Strickland, the Court must indulge a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. Miles v. Dorsey, 61 F.3d at 1478; Jackson v. Shanks, 143 F.3d 1313,1319 (10th Cir.), *cert. denied*, 525 U.S. 950, 119 S. Ct. 378 (1998). Ortiz has not overcome that presumption. He claims his attorney told him that, if he violated the terms of his probation, any resulting term of incarceration would be limited to the amount of time remaining on his probationary term. However, he has supplied nothing other than his own statement to support this assertion. There is nothing in the plea agreement indicating that this is what the parties agreed to, and nothing was said at either the plea hearing or the sentencing hearing on the original charges, to indicate that Ortiz was operating under this assumption, whether prompted by statements of his attorney or otherwise. Ortiz received a substantive benefit from entering into the plea agreement, and he has failed to establish that an alleged statement by his attorney with regard to the consequences of violating probation was the reason for accepting the plea offer, or that he would not have accepted the offer if attorney had not made the alleged assurances.

28. Ortiz also asserts that the attorney representing him at the time of sentencing on the probation violation was ineffective in failing to object to the illegal sentence rendered. As discussed

12

above, the sentence was not illegal under state or federal law. There was, therefore, no ground on which the attorney could object. It is not ineffective assistance to fail to raise a meritless argument. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995).

## Deference to State Court Determination

29. The Court notes that Ortiz raised issues of double jeopardy, due process, equal protection, cruel and unusual punishment, ineffective assistance of counsel, and failure to follow state sentencing law, in his state habeas petition and in other post-convictions motions in state court. The state district court found no legal basis for relief, and the New Mexico Supreme Court denied certiorari. (Exs. P-Y to Answer). These rulings are not contrary to federal law and do not represent unreasonable determinations of the facts in this case. As an alternative to the above analysis, the Court defers to the state court rulings. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S. Ct. 1495 (2000).

## **Recommended Disposition**

That Ortiz's petition be denied and the case be dismissed with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge